# EXHIBIT 4

Case 3:14-cv-01646-MPS   Document 102-8   Filed 12/30/15   Page 2 of 11

CHARLES HUDSON, ET AL. vs. AISHA BABILONIA, ET AL.
11/19/2015                                                    Charles Hudson

```
UNITED STATES DISTRICT COURT
CIVIL CASE NO. 3:14-CV-1646-MPS
------------------------------------x

CHARLES HUDSON AND ALEESHA HUDSON,

     Plaintiffs,

     VS.

AISHA BABILONIA, SLM, SALLIE MAE, INC.,
SALLIE MAE BANK, AND PFS/PROGRESSIVE
FIN SERV, INC.,

     Defendants.

------------------------------------x
```

VOLUME II

The Continued Deposition of CHARLES HUDSON, taken on behalf of the Defendants in the hereinbefore entitled action, before Francine Garb, a Certified Shorthand Reporter and Notary Public within and for the State of Connecticut, commencing at 9:14 a.m., on November 19, 2015, at the offices of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., 281 Tresser Boulevard, Suite 602, Stamford, Connecticut 06901.

COURT REPORTER:   FRANCINE GARB, CSR

LICENSE # 139

Case 3:14-cv-01646-MPS   Document 102-8   Filed 12/30/15   Page 3 of 11

CHARLES HUDSON, ET AL. vs. AISHA BABILONIA, ET AL.
11/19/2015                                                          Charles Hudson

```
 1            MR. SEIDLER:  Would you mark Defendants'
 2      Exhibit 38.
 3            (Document bearing Bates Nos. NAV000221
 4      through 266 marked Defendants' Exhibit 38 for
 5      identification.)
 6   BY MR. SEIDLER:
 7      Q     Looking at Defendants' Exhibit 37,
 8   Mr.Hudson's, would you agree that these are your
 9   responses and it looks like also supplemental
10   responses to the second set of interrogatories
11   directed to you; is that correct?
12      A     Yes, sir.
13      Q     And turning to Page 9.
14            Actually, starting on Page 8, you see
15   Interrogatory No. 4 asks you to identify each and
16   every communication you have had with Navient
17   Defendants, and for each communication, to state
18   the date, correct?
19      A     Correct.
20      Q     And on the next page, in your responses,
21   your supplemental responses, you say, "Please see
22   Sallie Mae correspondence history Bates Numbered
23   NAV000221 to 266, which shows that Sallie Mae used
24   artificial or a prerecorded voice or an automated
25   telephone dialing system to make more nonemergency
```

Case 3:14-cv-01646-MPS   Document 102-8   Filed 12/30/15   Page 4 of 11

CHARLES HUDSON, ET AL. vs. AISHA BABILONIA, ET AL.
11/19/2015                                                              Charles Hudson

```
 1   or un-consented calls to Aleeshia and Charles
 2   Hudson's cellular telephone numbers and landline
 3   numbers."
 4              Do you see that?
 5         A    Yes, sir.
 6         Q    Looking at the next exhibit, Defendants'
 7   Exhibit 38, which you were handed there, do you
 8   agree that those are the documents that you are
 9   referring to, NAV 221 to 226 at the bottom, do you
10   see?  Or 266, sorry.
11              Do you see at the bottom of the page,
12   it's labeled NAV?  At the bottom of the page on
13   the right, sir.
14         A    Okay.  Yes.
15         Q    Do you see the first page is NAV 221?
16         A    Yes.
17         Q    And if you go to the last page, it's
18   NAV 266?
19         A    Yes.
20         Q    And so these are the documents that you
21   are referring to in your response to Interrogatory
22   No. 4, correct?
23         A    Yes, sir.
24         Q    Where in these documents does it show
25   that Sallie Mae used artificial, or prerecorded
```

Case 3:14-cv-01646-MPS   Document 102-8   Filed 12/30/15   Page 5 of 11

CHARLES HUDSON, ET AL. vs. AISHA BABILONIA, ET AL.
11/19/2015                                                    Charles Hudson

```
 1   voice or automated telephone dialing system?
 2            Let me ask it this way:  Is that your
 3   response, or is that your lawyer's response?
 4       A    (No response).
 5       Q    Let me ask it this way, this may help:
 6   Can you say whether Defendants' Exhibit 38 shows
 7   that a prerecorded, or artificial voice or
 8   automated dialing systems were being used?
 9       A    I can't say, sir.
10       Q    You can't say?
11       A    No.
12       Q    So who wrote that portion of your
13   answer?  Are those your words, or are those your
14   lawyer's words?
15            MR. EGBARIN:  Where are you referring
16       to?
17            MR. SEIDLER:  Page 9 of Defendants'
18       Exhibit 37.
19   BY MR. SEIDLER:
20       Q    Where it says at the top of Page 9,
21   "Please see Sallie Mae correspondence history
22   Bates Numbered NAV 221 through 266," that
23   paragraph, are those your words or your lawyer's
24   words?
25       A    My lawyer's words.
```

CHARLES HUDSON, ET AL. vs. AISHA BABILONIA, ET AL.
11/19/2015                                                              Charles Hudson

```
 1       Q      Because you can't say that those pages
 2    actually reflect that information, can you?
 3       A      I can't say.
 4              MR. SEIDLER:  I don't have anything
 5    else.
 6              MR. EGBARIN:  You are excused.
 7              (Time noted:  10:34 a.m.)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

# EXHIBIT 5

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHARLES HUDSON, ET AL | : | CIVIL ACTION NO. |
| Plaintiffs | : | 3:14-CV-01646 (MPS) |
| | : | |
| v. | : | |
| AISHA BABILONIA, ET AL | : | |
| Defendants. | : | April 7, 2015 |

**DEFENDANT'S EXHIBIT** Navient 1

AFFIDAVIT IN SUPPORT OF
MOTION FOR DEFAULT JUDGMENT

I, Charles Hudson, being duly sworn, state the following:

1. I am the Plaintiff named in the above-entitled action and I am familiar with the facts of this matter;

2. I reside at my single family residence at 514 Hawthorne Lane, Windsor, Connecticut, 06095 where I have resided with my wife, Aleeshia Bailey-Hudson, Plaintiff in this matter, since 2002;

3. Prior to living at 514 Hawthorne Lane, in Windsor, Connecticut, I lived at a townhouse at 63 Victoria Street, Bloomfield, CT 06002, from 1988 to 2002;

4. Prior to Victoria Street Bloomfield, Connecticut, I lived in an apartment at Sherbrooke Drive, Hartford, Connecticut from 1987 to 1988;

5. Prior to living at Sherbrooke Drive, Hartford, Connecticut, I lived with my mother at her single family residence at 172 Cottage Grove Road, Bloomfield, Connecticut from 1984 to 1987;

6. I have never lived elsewhere nor have I had any address except these addresses I stated above;

7. I have been employed at Aetna Insurance, Windsor, Ct, 1989-1997 and then at the United Parcel Service, (UPS) Hartford, Connecticut since 1997, where my income has progressively increased to $88,000 per annum as of 2015;

8. Around 2010 my wife and I applied for mortgage modification for the mortgage on my residence at 514 Hawthorne Lane, Windsor, Connecticut, 06095, with a mortgage broker, John Rondell who operates a mortgage services business through Reid Enterprise Inc., at 1436 Park Place, Brooklyn, New York 11213-3043 and through FSG, a company located at 114-14 Sutphin Boulevard, Jamaica, NY 11434;

9. My mortgage modification was successful through JPMorgan Chase Bank, NA on February 12, 2012 and our mortgage interest payments were reduced;

10. I used the services of Mr. Rondell because he was someone my wife

and I knew;

11. I was upset when Sallie Mae informed me on January 13, 2014 that my personal information had been used to obtained a loan with Sallie Mae for $15,000;

12. When Sallie Mae contacted me on January 8, 2014 informing me about an outstanding debt I told the representative that my wife would call him as I assumed he was referring to a loan for my wife, Aleeshia;

13. My wife handles all the finances in my household and taking care of our two disabled children, Kian 10 years old who has rare Hurlers syndrome since birth and Thadan, 24 years old, who sustained a medical injury during delivery resulting in epilepsy;

14. My wife called the Sallie Mae representative on January 8, 2014 and we discovered that my personal information was fraudulently used for a Sallie Mae private student loan;

15. Sallie Mae told me on January 13, 2014 when I spoke to them that I co-signed for a private student loan for $15,000 for a person named Aisha Babilonia;

16. I told Sallie Mae during the conversation on January 13, 2014 that I never co-signed any student loan for anyone and that I don't know the person, Aisha Babilonia who Sallie Mae approved the loan for;

17. Sallie Mae advised me to submit a fraud report and a police report;

18. I made a police report with the Windsor, Connecticut Police on February 25, 2014;

19. I later discovered in January 2014 that Mr. Rondell misused my personal information in an unrelated transaction which I had no knowledge whatsoever;

20. I subsequently filed another police report with the Windsor Connecticut police against Mr. Rondell on April 4, 2014;

21. After I made the police report for the Sallie Mae identity theft on February 25, 2014, my lawyer, attorney Osakwe, then sent both the completed affidavit of fraud and the Windsor Police Report to Sallie Mae on July 17, 2014;

22. Sallie Mae refused to accept my dispute that the student loan debt did not belong to me and continued to make collection calls to collect the student loan debt;

23. I do not know how Sallie Mae obtained my cellphone number that Sallie Mae used to call me on January 8, 2014 and on other dates;

24. I did not give Sallie Mae the permission to call me on my cellphone or any telephone;

25. In addition to Sallie Mae attempting to collect a debt I did not sign for, my credit was messed up and, my wife and I were denied credit in September 2014 when we tried to obtain a new lease on our car with Toyota Motor Credit Corporation;

26. Toyota Motor Credit Corporation finally gave us a new 3-year car lease in December 2014 at a higher rate than before costing us about $35.00 per month extra;

27. We have never been late on our bills and especially because in managing our children's medical disabilities, we are very careful to

Case 3:14-cv-01646-MPS   Document 58-3   Filed 04/09/15   Page 4 of 5

maintain excellent credit so we can be able to handle the medical expenses for their care;

28. I have disputed the debt with Sallie Mae, but the Sallie Mae has refused to delete the false information from my credit report till now

29. Sallie Mae falsely reported to the credit bureaus that I reside at 1436 Park Place, Brooklyn New York 11213 and has refused to delete this false information from my credit report till now;

30. All of this mess with the Sallie Mae student loan has caused me stress and anxiety and fear;

31. Sometimes, I blame my wife and sometimes I blame myself, for these bad things that keep happening to us including the fact that someone used my information to get money, now my credit is messed up and we may not be able to pay for the medical needs of our two disabled children;

32. My wife had to stop working after our son was born on November 4, 2004 with Hurlers Syndrome. My son underwent a bone marrow stem cell transplant and she does a lot of travel in and out-of-state for care for our son Kian who uses a wheel chair and, all we have for support is my credit and my income from the United Parcel Service;

33. So I was very nervous when Sallie Mae representative asked me on January 8, 2014, if Sallie Mae had contacted my employer about the student loan debt;

34. I have become afraid that Sallie Mae will attach my income because of this debt that I know nothing about;

35. When I did my annual physical in September 2014 with my private physician, Doctor Joe Miller, told me that my blood pressure increased;

36. I have been very concerned and worried about the Sallie Mae debt and the collection activities and how my credit was messed up and how I was denied financing because my credit score had dropped from 725 to 613;

37. I was also very afraid about my personal information that was stolen and what else would turn up;

38. I have been stressed out and nervous about this situation and I recently saw a counselor, Dennis konadu for evaluation and his diagnosis is contained in his report;

39. When Babilonia used my personal information to obtain the credit of $15,000, through Sallie Mae on April 10, 2012, Sallie Mae did not contact me before this date or at any time in 2012 to verify the information on the application for the private student loan;

40. I don't know if in April 2012, Sallie Mae conducted a credit evaluation of my credit report with any credit bureau, because if Sallie Mae looked at my credit report, Sallie Mae would have realized that I lived in Windsor, Connecticut;

41. Sallie Mae never sent any letter to my residence at 514 Hawthorne Lane, Windsor, Connecticut which is listed on my credit report;

42. And If Sallie Mae contacted me in April 2012, all this mess would not have occurred because I would have told Sallie Mae on that date in April 2012 that I don't know who Aisha Babilonia is and that I don't have anything to do with any student loan.

43. The foregoing is true and accurate to the best of my recollection.

By: *Charles Hudson*
Charles Hudson

Sworn to and subscribed before me this 8th day of April, 2015.

*Natalie Mullins*
Notary Public

My Commission Expires: 5/31/2017