IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHARLES HUDSON AND | : | CIVIL ACTION NO. |
| ALEESHA HUDSON | : | 3:14-cv-01646 (MPS) |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| AISHA BABILONIA, SLM CORP., | : | |
| SALLIE MAE BANK, AND | : | |
| PFS/PROGRESSIVE FIN. SERV, INC. | : | |
| | : | |
| Defendants. | : | FEBRUARY 15, 2016 |

**REPLY BRIEF IN SUPPORT OF NAVIENT DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

Defendants Navient Corporation, into which SLM Corporation has merged, Navient

Solutions, Inc. ("NSI"), formerly known as Sallie Mae, Inc., and Sallie Mae Bank (collectively,

the "Navient Defendants"), hereby submit this Reply Brief in Support of their Motion for

Summary Judgment (Dkt. # 102) addressing the arguments advanced by Plaintiffs Charles and

Aleeshia Hudson ("Plaintiffs") in their Opposition to Navient Defendants' Motion for Summary

Judgment (Dkt. #112) (the "Opposition" or "Pls.' Opp.").

**ARGUMENT**

In their Motion for Summary Judgment, Navient Defendants demonstrated that each of

Plaintiffs' claims fail based on well-established legal principles and a few simple, undisputed

facts.  The Opposition fails to address Navient Defendants' dispositive points of law, and

Plaintiffs' Rule 56(a)(2) statement (the "SDF"), rather than cite to any material fact in dispute

(because Plaintiffs cannot), relies exclusively on the recitation of boilerplate legal elements.[1]

---

[1] Pursuant to Local Rule 56(a)(2), a party opposing summary judgment must provide "a list of each issue of material
fact as to which it is contended there is a genuine issue to be tried."  Local R. 56(a)(2).  Plaintiffs' Local Rule
56(a)(2) statement, which is nothing more than a "cut-and-paste" of the elements of the claims being asserted, is not

(*See* SDF p. 8, "Disputed Issues of Material Fact," ¶¶ 1-7); *see also See Goenaga v. March of Dimes Birth Defects Found*., 51 F.3d 14, 19 (2d Cir. 1995) (finding "speculative assertions on matters" insufficient to defeat summary judgment.)  Taking the facts in the light most favorable to Plaintiffs, it is undisputed that:

- NSI believed that Mr. Hudson cosigned for the Loan when it disbursed the Loan in 2012, and when it requested Mr. Hudson's consumer reports.  (*See* SDF p. 7, ¶ 48, 57.)

- NSI requested Mr. Hudson's consumer report for use in its servicing and collection activities on the Loan.  (*See* SDF p.3, ¶ 21 and p. 7, ¶ 48.)

- Attorney Osakwe provided NSI with an incomplete identity theft packet.  (*See* SDF p. 4, ¶ 31), and when NSI attempted to contact Attorney Osakwe for additional information, he refused to provide it and instead threatened a lawsuit.  (*See* SDF p. 5, ¶ 35.)

- NSI concluded its fraud investigation on November 18, 2014, and determined, based on information available to it and through its protocol, which included its review of the ACDVs and validating the accuracy of the information provided to the consumer reporting agencies, that there was insufficient evidence to corroborate Mr. Hudson's claim.  (*See* SDF p. 5, ¶ 39, 44-46.)

- The ACDVs asserted the same fraud claim NSI had already investigated, and did not contain new information, thus NSI was forced to rely on the incomplete information already provided by Mr. Hudson, information that notably did not include, among other things, any reference to John Rondell, Plaintiffs' mortgage broker, against whom Plaintiffs had filed a police complaint regarding misuse of Mr. Hudson's personal information, and whose address Mr. Hudson had been advised, as early as January 8, 2014, was the same address identified as Mr. Hudson's in connection with the application for the Loan.  (*See* SDF p.6, ¶¶ 44-46, 50-56.)

Notably, Plaintiffs did not even address the fact that Mrs. Hudson does not have standing to assert any of the claims in the Complaint, nor did they address the fact that Navient Corporation and Sallie Mae Bank did not engage in any of the activity described in the Complaint.  Given the above admissions, and others, along with the points of law outlined below

---

demonstrative of a good faith attempt to present facts that are actually material or that are in dispute, and should be stricken by this Court.

and in Navient Defendants' primary motion, Navient Defendants are entitled to judgment in their

favor on the entirety of Plaintiffs' Complaint.[2]

## I.    Plaintiffs Mischaracterize the Scope of the Identity Theft Statute.

Plaintiffs urge this Court to apply what amounts to strict liability for Conn. Gen. Stat.

§53a-129a (the "Identity Theft Statute"), despite the fact that, on its face, it requires knowing

conduct.[3]  (Pls.' Opp., p. 14.)  This theory has the effect of, among other things, punishing a loan

servicing company that, despite safeguards and best efforts to prevent identity theft, is the victim

of fraud and disburses a loan to an identity thief.   This is not the intent of the Identity Theft

Statute.  *See State v. Pond*, 315 Conn. 451, 453 (2015) ("we are not persuaded that the legislature

intended to punish offenders for conspiring to commit crimes that they never agreed or intended

to commit . . . [w]ith respect to both conduct and results elements [of a crime], attaching a *mens

rea* requirement to the criminal element is typically a relatively straightforward matter.")

In *Bentley v. Greensky Trade Credit, LLC*, 2015 WL 9581730 (D. Conn. Dec. 30, 2015),

the plaintiff alleged that GreenSky Trade Credit, LLC (a loan servicing company), as well as

Union First Market Bank, violated the Identity Theft Statute when they "stole her identity to

complete an application for a loan."  *Id*. at *8.  The Court dismissed the claim, holding that the

defendant believed the plaintiff's personal information and signature were freely and properly

provided on the loan application.  *Id*. at 8-9.  Here, it is undisputed that NSI took measures to

---

[2] Faced with a record that does not support their claims, Plaintiffs provided the Court with a document dump, attaching numerous pages of irrelevant information in hopes that it will create the appearance of issues of material fact.   It is not the Court's function to sift through Plaintiffs' largely irrelevant exhibits.  *See 2025 Emery Highway, L.L. C. v. Bibb County, Ga.,* 377 F.Supp.2d 1310, 1333 (M.D.Ga.2005) ("While such evidence may exist, it is surely not the duty of this Court to scour the record in an attempt to locate evidence which may raise a material question of fact on summary judgment"); *Keach v. U.S. Trust Co., N.A.,* 245 F.Supp.2d 941, 945 (C.D. Ill.2003) ("It is not the responsibility of this Court to root through the record like a pig in search of truffles to determine whether there is a factual basis for determining liability.")

[3] Pursuant to Conn. Gen. Stat. §53a-129a(a): "A person commits identity theft when such person knowingly uses personal identifying information of another person to obtain or attempt to obtain, in the name of such other person, money, credit, goods, services, property or medical information without the consent of such other person."

verify Mr. Hudson's information, including multiple correspondence with and actually speaking to someone who represented themselves to be Mr. Hudson, and who was able to verify all of Mr. Hudson's personal information.  (*See* SDF p. 7, ¶ 48.)  It is further undisputed that NSI believed that Mr. Hudson co-signed for the Loan when it was disbursed, and it is therefore undisputed that NSI did not "knowingly" use Mr. Hudson's information without his consent.  *Id*.

Second, Plaintiffs cannot establish that NSI "obtained . . . property" from Mr. Hudson. Plaintiffs' allegation that interest charged on the Loan satisfies this element is a contrived reading of the statute.  (Pls.' Opp., p. 11).  Regardless, this theory was not included in the Complaint, and is based on speculation as Plaintiffs did not take discovery on this issue. Plaintiffs cannot use the Opposition as means of amending their Complaint.  *See Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir.1998) (recognizing that a party may not use opposition to a dispositive motion as a means to amend the complaint); *Avillan v. Donahoe*, 483 F. App'x 637, 639 (2d Cir. 2012) ("The district court did not err in disregarding allegations Avillan raised for the first time in response to Potter's summary judgment motion.")

Third, Plaintiffs have not, and cannot, cite authority applying a "criminally negligent" standard to the Identity Theft Statute, and instead rely on cases applying that standard to manslaughter.[4]  *See State v. Bunkley*, 202 Conn. 629, 642 (1987) (interpreting manslaughter statute, which on its face applies to criminally negligent conduct); *State v. McMahon*, 257 Conn. 544, 778 A.2d 847 (2001) (same).  Again, the Identity Theft Statute, by its terms, requires "knowing" conduct.  Regardless, NSI is not liable under a "criminally negligent" standard. Contrary to Plaintiffs' assertion, NSI's efforts to verify Mr. Hudson's information actually exceeded those by the defendant in *Bickley v. Dish Network, LLC*, 751 F.3d 724 (6th Cir. 2014), a case cited by Plaintiffs as the gold standard for a "reasonable lender." (Pls.' Op., p. 17.)  In

4

*Bickley*, the Defendant did nothing more than cross reference the plaintiff's social security number with the name on the credit report, which the Court found was reasonable.  *Id.* 728. Here, NSI progressed through several additional layers of verification, including requesting Mr. Hudson's credit report, and speaking to someone claiming to be Mr. Hudson who was able to verify all of his personal information.  (*See* Navient Defendants' Rule 56(a)1 Statement, Dkt. # 102-2 at p. 2, ¶8.)  Far from "criminally negligent," and accepting Mr. Hudson's allegation of identity theft against Defendant Babilonia as true, NSI is itself a victim of fraud.

## II.    Plaintiffs Fail to Raise a Triable Issue of Fact on their TCPA Claim, and Instead Again Attempt to Improperly Amend Their Complaint.

The Opposition asserts, for the first time, that Plaintiffs are entitled to damages for calls placed to their landlines.  Again, Plaintiffs cannot amend their Complaint *via* response to a dispositive motion.  *See Wright, supra,* 152 F.3d 169 at 178.  Regardless, calls like NSI's, which were made to residential telephones for purposes of seeking repayment on a loan and not for telemarketing, are expressly excluded from the TCPA.  *See McBride v. Affiliated Credit Services, Inc*. *See* 2011 WL 841176, at *3 (D. Or. Mar. 7, 2011) ("While I certainly agree that non-debtors lack a prior business relationship with a debt collector, according to the Commission debt collection calls are not solicitations or advertisements and thus fall within a recognized exemption"); *Franasiak v. Palisades Collection, LLC*, 822 F. Supp. 2d 320, 324-25 (W.D.N.Y. 2011) (same); *Anderson v. AFNI, Inc.,* 2011 WL 1808779, at *11–12 (E.D. Pa. May 11, 2011) (holding that "the exemption codified at 47 C.F.R. § 64.1200(a)(2)(iii) applies to calls to non-debtors made purely for the purpose of debt collection.")

Plaintiffs also offer no evidence that NSI utilized an "automatic telephone dialing system" or "artificial or prerecorded voice" to contact them.  Plaintiffs did not take discovery on

---

[4] Plaintiffs concede that the Identity Theft Statute "does not penalize mere negligence."  (Pls.' Op, p. 14.)

this issue, and instead cite to a Wikipedia article that purports to discuss "automated dialers" in an attempt to explain notations included on correspondence history produced by Navient Defendants.  Plaintiffs cannot rely on Wikipedia -- a crowd sourced website that can be edited anonymously by anyone with access to the internet -- to defeat summary judgment.  *See Fleishman v. Cont'l Cas. Co.*, 2011 WL 5866264, at *4 (N.D. Ill. Nov. 22, 2011) *aff'd,* 698 F.3d 598 (7th Cir. 2012) ("As useful as Wikipedia is as an information source, a Wikipedia entry is not admissible evidence. Wikipedia is subject to edits by almost anyone with an Internet connection (its motto is, the free encyclopedia that anyone can edit.")*; RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 557 (S.D.N.Y. 2013) *aff'd,* 559 F. App'x 58 (2d Cir. 2014) ("Suffice it to say, Wikipedia -- even if Plaintiffs' counsel had properly cited it -- is not valid legal authority.  And in this instance, it also happens to be wrong. . . .")   The only admissible evidence in the record regarding the calls placed by NSI is the sworn testimony of NSI's Senior Customer Advocate, James Austin, which establishes that "during the course of serving the Loan, any calls NSI made to Plaintiffs' cellular telephones were manually initiated by an agent, and were not placed using an autodialer or a pre-recorded artificial voice." (Affidavit of James Austin, Dkt. #102-3 at p. 8, ¶ 43.)

The Opposition also ignores that Plaintiffs admit having no knowledge of whether they received autodialed or prerecorded calls to their cell phones, and that Ms. Hudson is unaware of <u>any</u> calls being made to her cell phone.  (*See* SDF p. 6, ¶ 41.)  Any testimony regarding Mrs. Hudson allegedly "receiv[ing] those funny voice things," (Pls. Op., p. 34) was related to landlines, and does not support Plaintiffs' TCPA claims, which are restricted to phone calls placed to their cellular telephones.

III.    **NSI Had a Permissible Purpose to Request Mr. Hudson's Credit Report.**

Plaintiffs argue that because Mr. Hudson's identity was stolen, NSI could not have had a "permissible purpose" to request Mr. Hudson's credit report.  However, courts have squarely rejected Plaintiffs' unsupported argument, including the court in *Bickley, supra,* 751 F.3d at 724 (a case curiously relied upon heavily by Plaintiffs.)

Regarding the April 6, 2012 request, "verifying the identity of a consumer and assessing his eligibility for a service is a 'legitimate business need,' and therefore constitutes a permissible statutory purpose." *Bickley,* 751 F.3d at 731.  In fact, the *Bickley* court found that penalizing the defendant for requesting the plaintiff's credit report as part of a transaction with an identity thief is against the spirit of the FCRA, because "to hold otherwise would twist the underlying purpose of the [FCRA] and punish companies for [requesting credit reports to prevent] identity theft."  *Id.* at 732.  Here, Plaintiffs concede NSI "pulled Mr. Hudson's credit report on April 6, 2012 for the extension of the Loan" (Pls.' Op., p. 19), admitting the credit report was requested to "verify the identity of a consumer."[5]

As for the remaining credit reports, Mr. Hudson first alleged that his identity had been stolen on January 13, 2014, which is subsequent to NSI requesting his credit report on January 1, 2014.  (SDF p. 4, ¶ 26).  When NSI requested his credit report on May 11, 2014, Mr. Hudson had yet to submit a complete identity theft affidavit, or otherwise cooperate with NSI's investigation.  (*See* SDF p. 4, ¶ 34.)  In both instances, NSI had "reason to believe" that Mr. Hudson was responsible for the Loan (*see* SDF p.3, ¶ 21 and p. 7, ¶ 48), and the reports were requested for the

---

[5] Plaintiffs reliance on the Ninth Circuit's holdings in *Pintos v. Pacific Creditors Assoc.*, 565 F. 3d 1106 (9th Cir. 2009) and *Andrews v. TRW, Inc*., 225 F. 3d 1063 (9th Cir. 2000) is similarly misplaced.  The *Pintos* decision is factually distinguishable from the case at bar as it dealt with charges imposed by a towing company.  Regardless, courts overwhelmingly reject the reasoning in *Pintos*, finding a permissible purpose for requesting the credit report of an alleged victim of identity theft.  *See, e.g., Shostack v. Diller*, 2015 WL 5535808 at *9 (S.D. N.Y. 2015) (no FCRA violation where defendant pulled credit report of alleged ID theft victim.)  *Andrews* is also irrelevant, as the

purpose of extending credit and/or collecting on an account.  *See Bentley*, *supra,* 2015 WL 9581730, at *4.

Plaintiffs cannot establish that NSI violated the FCRA when it requested Mr. Hudson's credit reports, let alone that NSI "willfully" or "negligently" violated the FCRA, or that the requests were made under "false pretenses," which alone is fatal to their claim.[6]  *Id.*  at *4 ("a plaintiff must allege both that the defendant used or obtained the plaintiff's credit report for an impermissible purpose, and that the violation was willful or negligent.")

## IV.    NSI's Investigation was Reasonable.

Far from conducting a "cursory review" as argued by Plaintiffs, it is undisputed that in response to Mr. Hudson's allegations of identity theft, among other things: (1) NSI instructed Mr. Hudson to contact NSI's fraud department, submit a police report, and contest the debt with CRAs as early as February 2014 (*see* SDF p. 4, ¶ 26.); (2) Mr. Hudson did not submit a fraud affidavit or police report until July of 2014 (*see* SDF p. 4-5, ¶¶ 31-34); (3) when NSI attempted to work with Attorney Osakwe to obtain more information, he hung up the phone and threatened a lawsuit (*see* SDF p. 5, ¶ 35); and (4) Mr. Hudson believed that John Rondell may have stolen his personal information, but did not include that information in his fraud affidavit, despite learning during his telephone conference with NSI on January 8, 2014 that the address that had been provided for Mr. Hudson when the Loan was processed was Rondell's Brooklyn address. (*See* SDF p. 7, ¶¶ 50).  In fact, Mr. Hudson did not mention Mr. Rondell until discovery in this case.   Ultimately, NSI utilized this newly acquired information to continue its investigation into

---

defendant in that case was a consumer reporting agency, not a furnisher of information, and the Court did not analyze what constitutes a permissible purpose to request a credit report.

[6] Plaintiffs' inflammatory allegation that Mr. Hudson's Jamaican accent influenced NSI's actions is unsupported, inappropriate, and malicious.  (Pls.' Op., p. 27.)  This statement is another example of Plaintiffs' attempt to distort the record, and should be disregarded by the Court.

Mr. Hudson's allegations of identity theft, among other things, comparing information provided during the loan application process to information regarding Mr. Rondell, and agreed to release Mr. Hudson from responsibility on the loan at issue.[7]

NSI's obligation to investigate Mr. Hudson's claims under the FCRA only arose after he disputed the matter with the credit reporting agencies, which did not occur until September 26, 2014.  (*See* SDF p. 6, ¶ 43.)  At that point, NSI was only obligated to verify the information provided by the ACDVs in relation to its records.  Plaintiffs concede that the ACDVs received by NSI in response to Mr. Hudson's Letter of September 26 did not contain any new information.  (*See* SDF p. 7, ¶ 46.)  As described herein, NSI did more than just verify Mr. Hudson's information, and thus met its obligations under the FCRA and is entitled to summary judgment in its favor.  *See Alston v. United Collections Bureau, Inc.,* 2014 WL 859013, at *8 (D. Md. Mar. 4, 2014) (granting summary judgment in furnisher of information's favor, reasoning that the "reasonableness of the investigation undertaken by furnishers depends on the information provided to them.")

**V.     Plaintiffs Do Not Address the Fact that Navient Defendants are not "Debt Collectors" under the FDCPA, and Instead Improperly Attempt to Amend Their Complaint.**

Incredibly, Plaintiffs do not address the fact that Navient Defendants are expressly excluded from the FDCPA.[8]  Instead, Plaintiffs, <u>for the first time</u>, attempt to state a new claim under the

---

[7] *See* Affidavit of James Austin, attached hereto as Exhibit A, at ¶¶ 5, 6.  By letter dated January 12, 2016, NSI informed Mr. Hudson that it had "completed an investigation and, based on the information currently available to [NSI], [NSI] accepted [Mr. Hudson's] allegations that [the Loan was] originated without [Mr. Hudson's] knowledge or authorization.  At this time, [NSI has] updated [its] records to remove [Mr. Hudson] name from [the Loan]." (January 12, 2016 Letter from NSI to Mr. Hudson C/O Attorney Egbarin, attached as Exhibit 1 to Affidavit of James Austin, attached hereto as Exhibit A.)

[8] During multiple conversations with Attorney Egbarin relating to discovery in this case, the undersigned made it clear Plaintiffs' FDCPA claim was a non-starter because Navient Defendants are not debt collectors as defined by that statute.

Connecticut Creditors' Collection Practices Act, Conn. Gen. Stat. § 36a-646. This statute is not contained anywhere in Plaintiffs' Complaint, and is an entirely new theory of liability.

It is axiomatic that Plaintiffs are not permitted to amend their complaint in response to a dispositive motion. *See Wright, supra,* 152 F.3d 169 at 178; *Avillan v. Donahoe*, 483 F. App'x 637, 639 (2d Cir. 2012) ("The district court did not err in disregarding allegations Avillan raised for the first time in response to Potter's summary judgment motion."); *Shah v. Helen Hayes Hosp.,* 252 Fed.Appx. 364, 366 (2d Cir. 2007); *Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir. 1998) (noting that a party may not raise a new claim in response to a dispositive motion); *Thomas v. Egan,* 1 Fed.Appx. 52, 54 (2d Cir. 2001) ("[I]t is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion."); *Derisme v. Hunt Leibert Jacobson P.C.,* 880 F. Supp. 2d 339, 375 (D. Conn. 2012) ("Consequently, the Court will not consider these new allegations as they are not properly before the Court.") Navient Defendants had no opportunity to conduct discovery on Plaintiffs' brand new theory of liability. Given that Plaintiffs failed to address, and cannot dispute, that Navient Defendants are not "debt collectors" as that term is defined in the FDCPA, Count Five must be dismissed.

## **<u>CONCLUSION</u>**

For the reasons discussed herein, as well as those set forth in their opening summary judgment papers, Navient Defendants are entitled to summary judgment dismissing Plaintiffs' Complaint in its entirety.

Respectfully Submitted,


NAVIENT DEFENDANTS
NAVIENT CORPORATION, NAVIENT
SOLUTIONS, INC., F/K/A SALLIE MAE, INC.,
AND SALLIE MAE BANK

By  */s/ Robert F. Seidler*
Robert F. Seidler (admitted *pro hac vice*)
robert.seidler@ogletreedeakins.com
William C. Ruggiero (CT29248)
william.ruggiero@ogleetreedeakins.com
Ogletree, Deakins, Nash,
Smoak & Stewart, P.C.
281 Tresser Boulevard, Suite 602
Stamford, CT  06901
Phone: 203.969.3109
Fax: 877.229.7662
*Attorneys for Navient Defendants*

## <u>CERTIFICATION</u>

I hereby certify that on February 15, 2016 the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this document through the court's CM/ECF System.


*/s/ William C. Ruggiero*
William C. Ruggiero

23841785.1